FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

MAR - 2 2015

DAVID J MALAND, CLERK
BY
DEPUTY_____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

VICKI STARKS-FITTS,                    §
                                       §
                                       §
VS.                                    §     CRIMINAL NO. 1:12-CR-00119 MAC-ZJH
                                       §     CIVIL ACTION NO. 1:15-CV-_____
                                       §
UNITED STATES OF AMERICA               §     1:15CV0089

## MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES Movant, Vicki Starks-Fitts ("Starks-Fitts"), appearing *pro se*, and in support of this Memorandum would show as follows:

### I. JURISDICTION

Starks-Fitts is timely filing a Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") contemporaneously with this Memorandum of Law. Jurisdiction is vested in this District Court that presided over and imposed sentence pursuant to Rule 4(a) of the Rules Governing §2255 Proceedings. See *Liteky v. United States*, 510 U. S. 540, 562 (1994); *Pack v. Yusuff,* 218 F. 3d 448, 451 (5th Cir. 2000).

### II. STATEMENT OF THE GROUNDS FOR REVIEW

A.     Whether pretrial counsel's acts and omissions were ineffective under the Sixth Amendment to the Constitution of the United States where he failed to:  (1) Communicate with Starks-Fitts and provide information that she needed to assess the government's case-in-chief, including discovery and other evidence in order for her to make an informed decision as to whether to proceed to trial or plead guilty; (2) Conduct an adequate and independent pretrial investigation; (3) Interview any defense or government witnesses on behalf of Starks-Fitts; (4) Inform Starks-Fitts

of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial, including the maximum sentence if she was convicted at trial; (5) File substantive motions other than boiler plate motions off of his computer database; (6) Provide any information as to any affirmative defense that was available to Starks-Fitts if she proceeded to trial; (7) Negotiate a reasonable plea offer with the government on behalf of Starks-Fitts; and (8) Convey any government plea offer to Starks-Fitts.

B.      Whether counsel was ineffective at the Rearraignment hearing under the Sixth Amendment to the Constitution of the United States when he failed to: (1) Explain and discuss the Rearraignment hearing procedure and what would take place at that hearing prior to the proceeding; (2) Inform Starks-Fitts of the relevant circumstances and likely consequences of pleading guilty: (3) Review, discuss, explain and provide a copy of the written Plea Agreement to Starks-Fitts prior to the   Rearraignment hearing; and (4) Appear personally at the Rearraignment hearing to advise Starks-Fitts of the Court's inquiries and  colloquy. Counsel had a substitute stand in for him at the Rearraignment hearing who did not know  anything about Starks-Fitts's case and could not give proper advise to her. In essence, she was abandoned by her  attorney at the Rearraignment hearing.

C.      Whether sentencing counsel's failure to: Counsel failed to: (1) Review, discuss or explain the Presentence Report ("PSR") to Starks-Fitts; (2) File PSR objections which Starks-Fitts requested that he file; (3) Object and argue for mitigation of Starks-Fitts's sentence; (4) Misinformed Starks-Fitts that she would receive a reduction in her sentence pursuant to a downward departure motion by the government; (5) Argue that Starks-Fitts's sentence was substantively unreasonable; (6) Advise, inform and consult with Starks-Fitts regarding filing a direct appeal; and (7) File a Notice of Appeal deprived Starks-Fitts of effective assistance of counsel under the Sixth Amendment.

2

## III. STATEMENT OF THE CASE

### A.     Relevant Course of Proceedings and Disposition Below

On August 21, 2013, a one count Criminal Information was filed by the government in this case charging Sparks-Fitts with a Racketeer Influenced and Corrupt Organizations (Murder and Distribution of Methamphetamine) ("RICO"), in violation of 18 U.S.C. § 1962(c). See Doc. 288.[1]

On August 22, 2013, Starks-Fitts pled guilty to the one count Information. See Doc. 292.

On March 5, 2014,Starks-Fitts was sentenced to 378 months imprisonment, 5-years Supervised Release, and a $100 Mandatory Special Assessment Fee. See Docs. 455 & 456.

On June 12, 2014, Starks-Fitts filed a Pro Se Motion for Out of Time Appeal. See Doc. 514.

On June 17, 2014, the Court issue a Memorandum and Order denying the Pro Se Motion for Out of Time Appeal. See Doc. 516.

On August 25, 2014, the United States Court of Appeals for the Fifth Circuit dismissed her appeal. See Doc. 528.

### B.     Statement of the Relevant Facts

####   1.     SWS

The SWS is an acronym for "Solid Wood Soldiers" and "Separate White State." This race-based organization operates inside and outside of jails and prisons in Texas and elsewhere. It was founded during the 1990s by inmates within the Texas Department of Criminal Justice ("TDCJ") for the protection of white inmates and advancement of white supremacy and white separatism. The SWS eventually expanded its focus to include illegal activities for profit. Their criminal enterprises include

---

[1]

"Doc" refers to the Docket Report in U. S. District Court for the Eastern District of Texas, Beaumont Division in Criminal Number 1:12-cr-00119-MAC-ZJH-4, which is immediately followed by the Docket Entry number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶").

trafficking methamphetamine, firearms, and forged currency. SWS protects its power, territory, and profits through intimidation and violence, including assaults, robbery, and murder. The chain of command is president, vice-president, council, major, captain, lieutenant, sergeant, and soldier. This basic ranking structure remains constant, but there are frequent promotions, demotions, and terminations. See PSR ¶ 8.

Tanner Lynn Bourque ("Bourque") was a council member for the SWS, Kristopher Leigh Guidry ("Guidry") was a captain for the SWS, Kenny Don Stanley ("Stanley") was a soldier, James Lee Sedtal ("Sedtal") was also a member of SWS, although his rank is unknown. Associates of SWS included Starks-Fitts, Steven Claude Gibble ("Gibble") and Mikell Allen Cunningham ("Cunningham") was president of SWS. See PSR ¶ 13. Starks-Fitts only knew Gibble and Cunningham for approximately six (6) weeks.

2.   Offense Conduct

Starks-Fitts had met Bourque, Guidry, and Stanley through her son, James Trager, who was an SWS member. Bourque, Guidry, and Stanley had stayed at Starks-Fitts's residence for approximately three or four weeks prior to the murder of Sedtal. See PSR ¶ 26. Trager stopped by Starks-Fitts's residence to visit her as he was passing through town. He had several of his SWS friends with him. Later, in 2010, Trager and his friends stopped by again for a visit. As time passed, the SWS members maintained contact with Stark-Fitts for various reasons even without the presence of her stepson. She frequently heard the SWS members discussing assaults and possible murders, but Starks-Fitts thought they were "all talk." Stark-Fitts advised that she would never willingly be involved in a murder conspiracy in light of the fact her son was murdered. However, Starks-Fitts was present for the disposal of the Sedtal's body and subsequent meetings with SWS authorities, as she

4

feared for her life. She stated the members would not let her out of their sight, as they feared she would call the police.

In February 2011, Bourque became a constant companion of Starks-Fitts, partnering closely in her crystal methamphetamine trafficking business. Starks-Fitts conducted business from her residence located in Hull, Texas. Her source lived near Houston, Texas.

On March 11, 2011, while Gribble and Sedtal were delivering methamphetamine in Orange County, Sedtal shot and wounded an Aryan Brotherhood of Texas (ABT) associate. ABT is a nationally recognized criminal gang operating in the Orange County area of Texas and elsewhere. ABT has similar philosophies and operations as SWS and predates SWS in the Orange County area. ABT has de facto supremacy over SWS in Orange County. See PSR ¶ 15.  While at Starks-Fitts's residence on March 13, 2011, Bourque informed her, Guidry, and Stanley that Sedtal "needed to go" to prevent ABT from retaliating against SWS for the shooting. Sedtal called Starks-Fitts's residence numerous times requesting that they come and get him because he was afraid.  Bourque, Guidry, and Stanley drove to Vidor, Texas, picked up Sedtal, and transported him back to Starks-Fitts's residence. Bourque lied to Sedtal, telling him and the others that they were going to kill Gribble and put him in the trunk of Guidry's stolen automobile (a Nissan Maxima). Sedtal, Guidry, and Stanley then lined the trunk of the Maxima with garbage bags. See PSR ¶ 16. At this time, Starks-Fitts was in her house washing clothes, cooking and cleaning house. She was unaware that they had left until from her porch, she could see that their car was gone.

Bourque carried a .22 revolver out to the Maxima. The revolver had a make-shift silencer consisting of a plastic bottle taped over the gun barrel. The weapon was cocked and placed in the Maxima for Stanley to use to kill Sedtal. While Stanley was standing at the trunk with Guidry and

5

Sedtal, Stanley put the gun to Sedtal's head and fired once. When Sedtal fell to the ground, Stanley

and Guidry assumed he was dead and they reported back to Bourque. Shortly thereafter, Stanley and

Guidry placed Sedtals body in the trunk of the Maxima. Later, when Guidry and Stanley heard

moaning corning from inside the trunk, Guidry handed Stanley the gun and told Stanley to put Sedtal

"out of his misery." At that time, Guidry opened the trunk and Stanley shot Sedtal one more time.

After that shot, the moaning stopped. See PSR ¶ 17.

Around 7 or 8 a.m., on March 14, 2011, Bourque, Starks-Fitts, Guidry, and Stanley left the

residence together to dispose of Sedtal's body. Bourque and Starks-Fitts led the way in Bourque's

Lexus. Guidry and Stanley followed in the Maxima with Sedtal's body in the trunk and. On the way,

both cars stopped at a gas station and Starks-Fitts purchased fuel for the Maxima. See PSR ¶ 18.

After fueling the Maxima, Bourque, Starks-Fitts, Guidry, and Stanley left in the two vehicles

and headed north toward Rye, Texas. Starks-Fitts was familiar with the area and led Guidry,

Bourque, and Stanley to the end of a secluded logging trail where Guidry parked the Maxima.

Bourque, Guidry, and Stanley used lighter fluid to set the Maxima on fire. The four then left the car

burning and ate breakfast together at a nearby café. See PSR ¶ 19.

Bourque promoted Stanley and Guidry within SWS for following the order to kill Sedtal.

Stanley was promoted from Soldier to Captain, and Guidry was promoted from Captain to Major.

See PSR ¶ 21.

On March 19, 2011, Bourque, Starks-Fitts, Guidry, and Stanley returned to Southeast Texas.

On March 23, 2011, around 5:00 pm, a man called 911 to report he had discovered human remains

in the trunk of a burned car located in a remote wooded area in Hardin County, Texas. The car was

badly burned but a partial VIN number was recovered from the car by investigators. The burned car

was identified as the Maxima, which Guidry stole from a man in Houston, Texas, on or about February 14, 2011. See PSR ¶ 22.

On March 25, 2011, Stanley was riding an all-terrain vehicle (ATV) in Tyler County, Texas. Officers responded to the area and observed Stanley on the ATV, wearing a holstered loaded, Smith & Wesson .357 pistol  He had .380 ammunition and 9mm ammunition with him. The ATV was registered to Starks-Fitts, Stanley was arrested for being a felon in possession of a firearm. See PSR ¶ 23.

On March 27, 2011, law enforcement officers arrested Bourque and Starks-Fitts at Starks-Fitts' residence. Bourque was in possession of a ballistic vest and a .38 caliber revolver and attempted to hide behind a vehicle in the driveway. Starks-Fitts was inside the home when she was arrested. A loaded .380 caliber pistol was secreted within a stereo speaker insider her residence and a loaded .22 semi-automatic pistol was located inside her truck. The .22 pistol was inside a bag containing personal items that belonged to Starks-Fitts. Officers also found several items from the stolen Maxima at the residence, including the owner's registration, insurance documents, and a spare tire. The items were located next to Starks-Fitts' porch, where Stanley and Guidry had placed them before killing Sedtal. See PSR ¶ 24.

Guidry evaded law enforcement for several days, but surrendered on March 27, 2011. See PSR ¶ 25.

In addition to her association with the criminal venture to kill Sedtal, in the Factual Basis and Stipulation, Starks-Fitts acknowledges she was aware that SWS members sell methamphetamine to make money and was aware that some members "cooked" methamphetamine using the "shake and bake" method. See PSR ¶ 27.

### 2.   Presentence Report Calculations

In the PSR, the probation officer recommended a Base Offense Level of 43 pursuant to USSG § 2A1.1. See PSR ¶ 37. Starks-Fitts received a three (3) level reduction for her acceptance of responsibility pursuant to USSG § 3E1.1(a)(b).  See PSR ¶ 41-42. The PSR recommended a Total Offense Level of 40. See PSR ¶ 43. The PSR also recommended a Criminal History Category of III. Based upon a Total Offense Level of 40, and a Criminal History Category of III, the recommended PSR Guideline imprisonment range was 360 months to life. See PSR ¶ 95.

### 3.   Sentencing Hearing

On March 5, 2014, sentencing was held in this case. See Doc. 456. At sentencing, the Court adopted the recommendations of the PSR as its own. The Court found a Total Offense Level of 40 in the Criminal History III, yielding an advisory Guideline range of 324-405 months imprisonment. The Court sentenced Starks-Fitts to 378 months imprisonment, 5-years Supervised Release, and a $100 Mandatory Special Assessment Fee. See Doc. 456.

### 4.   Appellate Proceedings

Starks-Fitts *Pro Se* Out of Time Appeal was dismissed by the Fifth Circuit.

## IV. COGNIZABLE ISSUES UNDER § 2255

The function of a §2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or her detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the

sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

A §2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case demonstrate that no relief is warranted. See *United States v. Bartholomew*, 974 F. 2d 39, 41 (5th Cir. 1992): "A motion brought under 28 U. S. C. § 2255 can be denied without a hearing *only* if the motion, files, and records of the case *conclusively show* that the prisoner is entitled to no relief." (emphasis added); *United States v. Auten*, 632 F. 2d 478, 482 (5th Cir. 1980): "Under 28 U. S. C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." (emphasis added).

Upon granting a §2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a §2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U. S. 365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984); *United States v. Patten*, 40 F. 3d 774, 776 (5th Cir.1994).

To prevail on a claim of ineffective assistance of counsel, Starks-Fitts must show that (1) her counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Kimmelman*, 477 U. S. at 375; *United States v. Bounds*, 943 F. 2d 541, 544 (5th Cir. 1991).

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." See *Lockhart*, 506 U. S. at 371(citing *Strickland*, 466 U. S. at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Lockhart*, 506 U. S. at 368-73; *Armstead v. Scott*, 37 F. 3d 202, 207 (5th Cir. 1994). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. See *Wesley v. Johnson*, 83 F. 3d 714,723 (5th Cir. 1996).

The familiar two-part test of *Strickland v. Washington*, has been applied by the Supreme Court and the Fifth Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance.

The *Strickland* opinion dealt with a sentencing proceeding and the two-part test herein applies. See *Berger v. Kemp*, 483 U. S. 776, 788-96 (1987); *Strickland*, 466 U. S. at 687; *United States v. Segler*, 37 F. 3d 1131, 1136 (5th Cir. 1994); *United States v. Castro*, 26 F. 3d 56, 59 (5th Cir. 1994). In the context of a guilty plea a defendant must show "that there is a reasonable probability

that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U. S. 52 (1985). With regard to the performance prong of the *Strickland/Hill* test, "if a defendant is represented by counsel and pleas guilty upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson,* 397 U. S. 759 (1970). Thus, the prejudice inquiry should consider: (1) whether, but for counsel's errors, defendant would not have pled guilty and would have insisted on going to trial, [*Hill,* supra.] and (2) whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. *Lockhart v. Fretwell,* 506 U. S. 364 (1993). It is elementary that a guilty plea entered in reliance on a defendant's attorney's patently erroneous statement of the law in relation to the facts cannot be voluntary due to the attorney's ineffectiveness. See *Kennedy v. Maggio,* 725 F. 2d 269, 273 (5th Cir. 1984). In the context of sentencing, prejudice means that but for counsel's error(s), acts and/or omissions, his sentence would have been significantly less harsh. *United States v. Segler*, 37 F. 3d 1131, 1136 (5th Cir. 1994).

# V. **DISCUSSION**

As a preliminary matter, Starks-Fitts respectfully requests that this Court be mindful that *pro se* litigants are entitled to liberal construction of their pleadings. See *Rogers v. Boatright*, 709 F.3d 403 (5th Cir. 2013); *Haines v Kerner,* 404 U.S. 519, 520 (1972); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

A.    **Pretrial counsel's acts and omissions were ineffective under the Sixth Amendment to the Constitution of the United States when he failed to:  (1) Communicate with Starks-Fitts and provide information that she needed to assess the government's case-in-chief, including discovery and other evidence in order for her to make an informed decision as to whether to proceed to trial or plead guilty;(2) Conduct an adequate and independent pretrial investigation; (3) File substantive motions other than boiler plate motions off of his computer database; (4) Inform Starks-Fitts of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial, including the maximum sentence if she was convicted at trial; (5) Provide any information as to any affirmative defense that was available to Starks-Fitts if she proceeded to trial; and (6) Negotiate a reasonable plea offer with the government on behalf of Starks-Fitts and  Convey any government plea offer to her.**

The American Bar Association ("ABA") Model Rules of Professional Conduct (ABA 1983; updated 2011), state in its Preamble that:

> "[2] As a representative of clients, a lawyer performs various functions. As advisor, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications. As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system. As negotiator, a lawyer seeks a result advantageous to the client but consistent with requirements of honest dealings with others. As an evaluator, a lawyer acts by examining a client's legal affairs and reporting about them to the client or to others."

*Id.*

In this case, it cannot be said that Rosen met any of the above standard set by the ABA. In fact, the gravamen of this Starks-Fitts's grounds is that serious attorney errors of constitutional proportions deprived her of her Sixth Amendment right to effective assistance of counsel. As will

12

be shown, attorney ineffectiveness raised its ugly head throughout these proceedings. The ineffectiveness of counsel standards and conditions set forth above in *Strickland* are easily and unquestionably met in this case.

> (1-3)  Failure to Communicate, Conduct an Adequate Pretrial Investigation and File Substantive Pretrial Motions to Put the Government's Case to an Adversarial Test.

Defense counsel has the obligation to conduct a "reasonably substantial, independent investigation." *Neal,* 239 F.3d at 688 (quoting *Baldwin v. Maggio,* 704 F.2d 1325, 1332-33 (5th Cir.1983)). The Supreme Court has explained the governing standard:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland,* 466 U.S. at 690-91.

Starks-Fitts was unable to communicate and discuss her case in any meaningful way with her attorney, Steve Rocket Rosen ("Rosen") during his representation Starks-Fitt. Had Rosen discussed Starks-Fitts's case with her, he would have found out that she had very important information about potential witnesses that counsel could have subpoenaed to testify as defense witnesses if she proceeded to trial. However, Rosen failed to interview any defense or government witnesses on behalf of Starks-Fitts. Had he been interested in representing Starks-Fitts in any reasonable or objective manner and had done any independent pretrial investigation, or, at the very least, visited Starks-Fitts in jail, he would have known these pertinent facts. Rosen visit Starks-Fitts only one time without the US Attorney being with him.

13

to ask her if she killed anyone, she said N0. He said we are going to trial. He said he would be back to go over case. Rosen never did.

Not only did Rosen fail to conduct any kind of an independent investigation or file any pretrial substantive pretrial motions, other than three boiler plate styled motions, he also gave erroneous advice to Starks-Fitts. He did not properly inform Starks-Fitts of the maximum sentence in her case if she was convicted at trial. He also did not advise Starks-Fitts of the relevant circumstances and likely consequences of pleading guilty rather than standing trial. He rushed and pushed Starks-Fitts into a guilty plea without this vital information. Rosen strongly advised Starks-Fitts to plead guilty to the government's Information and not proceed to trial. Starks-Fitts believed that Rosen was pushing her into a plea agreement with the government that was not in her best interest, while Starks-Fitts wanted to proceed to trial. However, Rosen talked her out of it.

Therefore, Starks-Fitts counsel during pretrial was deficient under any kind of objective professional standard. Further, she was prejudiced because she received a harsher sentence, which was unreasonable based on her counsel's deficient performance.

Accordingly, Starks-Fitts conviction and sentence should be vacated for further proceedings.

(2)    <u>Failure to Inform Starks-Fitts of the Relevant Circumstances and Likely Consequences of Pleading Guilty as Opposed to Proceeding to Trial, Including the Maximum Sentence If She Was Convicted at Trial.</u>

"[C]riminal justice today is for the most part a system of pleas, not a system of trials...[T]he right to adequate assistance of counsel cannot be defined or enforced without taking account of the central role plea bargaining plays in securing conviction and determining sentence." *Lafler v. Cooper,* 132 S. Ct. 1376, 1388 (2012). Because of "[t]he reality [] that plea bargains have become so central to the administration of the criminal justice system...," *Missouri v. Frye,* 132 S. Ct. 1399,

14

1407 (2012), the Supreme Court recently recognized that the Sixth Amendment right to counsel "extends to the plea-bargaining process. During plea negotiations defendant are entitled to the effective assistance of competent counsel." *Lafler,* 132 S. Ct. at 1384 (internal citations and quotation marks omitted); see also, *Frye,* 132 S. Ct. at 1407.

The Fifth Circuit has observed that providing counsel to assist a defendant in deciding whether to plead guilty is "'[o]ne of the most precious applications of the Sixth Amendment.'" *United States v. Grammas,* 376 F.3d 433 (5th Cir. 2004) (quoting *Reed v. United States,* 354 F.2d 227, 229 (5th Cir. 1965)). When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice. See *Teague v. Scott,* 60 F.3d 1167, 1170 (5th Cir. 1995). Where a defendant persists in a plea of not guilty, counsel's failure to properly inform him about potential sentencing exposure may constitute ineffective assistance. *United States v. Ridgeway,* 321 F.3d 512, 514 (5th Cir. 2003).

To obtain relief on an ineffective assistance claim, Starks-Fitts ultimately must demonstrate that her attorney's performance was deficient, and that there is a reasonable probability that, but for counsel's deficient performance, she would have went to trial . See *Hill v. Lockhart,* 474 U.S. 52, 59 (1985); *Strickland v. Washington,* 466 U.S. 668, 687 (1984) ("*Strickland*"); see also, *Lafler v. Cooper,* 132 S. Ct. 1376 (2012) ("*Lafler*"); *Missouri v. Frye,* 132 S. Ct. 1399 (2012) ("*Frye*"); *Padilla v. Kentucky,* 130 S. Ct. 1473, 1480-81 (2010) ("*Padilla*") ("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'") (quoting *McMann v. Richardson,* 397 U.S. 759, 771 (1970)); *Garcia v. United States,* (No. 11-1476) (8th Cir. June 6, 2012).

15

"[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla,* 130 S. Ct. at 1486. When a defendant persists in a plea of not guilty, counsel's failure to properly inform her about potential sentencing exposure may constitute ineffective assistance. *Id.*

In *Hill*, the Court considered a *Strickland* claim based on allegations that the petitioner's lawyer had given bad advice that caused her to plead guilty instead of proceeding to trial. While there have been many cases analogous to *Hill*, it has been understood that *Hill* established a rule applicable to other circumstances when lawyers advise their clients at the plea-bargaining stage of the case. *Cf. Lafler,* supra; *Frye,* supra; *Padilla*, 130 S. Ct. at 1485 n.12. For instance, *Hill* has been applied to a case in which a lawyer was found to have provided ineffective assistance of counsel when the defendant rejected a plea deal and proceeded to trial in the face of overwhelming evidence of guilt and lacking any viable defense. See *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991).

The Supreme Court recently decided *Lafler* and *Frye* in an effort to provide guidance in how *Hill* applies to differing factual settings, and established constitutional standard applicable in all of the separate phases of a criminal trial where the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a defendant must show that but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. In *Frye*, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are

16

rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

This present matter is similar to *Lafler* in that Starks-Fitts was completely misinformed by her attorney, Rosen, of the consequences of pleading guilty rather than proceeding to trial. In fact, Starks-Fitts would have proceeded to trial had Rosen not affirmatively misadvised her regarding the law, the facts and consequences of doing so. Rosen failed to inform Starks-Fitts regarding the substance of the Plea Agreement. Rosen strenuously advised Starks-Fitts to sign the plea or they were going to give her life in prison. Starks-Fitts wholly relied on the advice of her attorney, and based on Rosen's advice opted to plead guilty. Had Starks-Fitts been properly informed by Rosen, she would have had a correct understanding of the facts, law of the case and potential consequences in order to make an intelligent and informed decision of whether to proceed to trial or to plead guilty. "It is the lawyer's duty to ascertain if the plea is available, that it could possibly lead to a shorter sentence and entered voluntarily and knowingly. He must actually and substantially assist her client in deciding whether to plead guilty. It is his job to provide the accused an understanding of the law in relation to the facts." *Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005). The advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. *Lafler,* supra. In other words, if the quality of counsel's advice falls below a certain minimum level, the client's decision whether to plead guilty or proceed to trial cannot be knowing and voluntary because it will not represent an informed choice. *Id.*

Also, whether a defendant pleads guilty or proceeds to trial, he must be aware of "the relevant circumstances and likely consequences" surrounding the plea. *Brady v. United States*, 397 U.S. 742 (1970).

17

In this case, Rosen  failed to correctly familiarize himself with the relevant facts, case law, applicable sentencing guidelines and the relevant circumstance and likely consequences of a conviction in Starks-Fitts's case. Rosen failed  to  properly  inform Starks-Fitts  of  all  these matters which led to Starks-Fitts's sentence. Had he done so, he could have advised Starks-Fitts of the actual correct options available.

As such, Rosen performed below an objective standard of reasonableness. Had he familiarized herself with the facts and researched the applicable law and sentencing guidelines, he would have been able to correctly inform Starks-Fitts of all of the potential consequences and hurdles that she faced if she pled guilty or proceeded to trial.  He simply failed to do so, and as a result, Starks-Fitts was prejudiced by receiving a significantly harsher sentence. *Glover,* supra. Rosen's failure to inform Starks-Fitts of the government's plea offer makes a *prima facie* case of ineffective assistance of counsel under *Strickland, Hill,* and *Lafler.* Rosen's misrepresentation of material facts, which Starks-Fitts wholly relied on, constituted deficient  performance. Starks-Fitts suffered  prejudice from Rosen's acts  and omissions when she received a much harsher sentence of 378 months. As such, Starks-Fitts easily meets *Strickland's*  two prong test for ineffective assistance of counsel and  relief should be granted in the first instance. Rosen's errors in this case were so blatant and flagrant that the Court can conclude that they resulted from a lack of experience, or neglect rather than an informed professional deliberation.

Rosen's advice was not a predication, probability, or an estimate, but rather a miscommunication or lack of communication with Starks-Fitts. In turn, Starks-Fitts wholly relied of Rosen's erroneous advice and believed those representations. Thus, Starks-Fitts was not fairly apprised of the consequences of her decision to plead guilty. In other words, Starks-Fitts's reliance

on Rosen's significantly flawed advice about the consequences of pleading guilty rather than proceeding to trial violated her due process rights. See *Hill*, 474 U.S. at 56; *Boykin*, 395.U.S. at 243 n. 5.

Had Rosen advised Starks-Fitts of the true sentencing exposure she faced if she pled guilty, there is a reasonable probability that she would have proceeded to trial.

Worse yet, Rosen failed to negotiate any reasonable plea agreement with the government that would have benefitted Starks-Fitts. Instead, he just accepted the government's first plea offer and rushed Starks-Fitts into guilty plea. He did not put the government's case to any kind of adversarial test. Had he done so, there is a reasonable probability that Starks-Fitts would have benefitted with a significantly less harsh sentence.

In *Lafler* v *Cooper*, 132 S. Ct. 136 (2012), the Supreme Court stated in part, "when inadequate assistance of counsel caused nonacceptance of a plea offer and further proceedings led to a less favorable outcome. After the plea offer had been rejected, there was a full and fair trial before the jury. After a guilty verdict, he  received a sentence harsher than that offered in the rejected plea bargain. The court held that, where counsel's ineffective advice led to an offer's rejection, and where the prejudice alleged was having to stand trial, a defendant must show that but for the ineffective advice, there was a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed." *Id.* The court vacated the judgment of the Sixth Circuit and remanded for further proceedings.

The Supreme Court stated in *Strickland,* criminal defense attorneys owe their clients "a duty to make a reasonable investigation or to make a reasonable decision that makes particular

investigations unnecessary," *Strickland,* 466 U.S. at 691. Further, in *Crisp v. Duckworth,* 743 F.2d

580, 583 (7th Cir. 1984)("as a general rule an attorney must investigate a case in order to provide

minimally competent professional representation."). Rosen did neither as the record clearly reflects.

Accordingly, Starks-Fitts's conviction and sentence should be vacated for relief in the first

instance. In the alternative, an evidentiary hearing should be held so that she may further prove her

meritorious grounds, resolve facts in and out of the record in dispute, and expand an incomplete

record.

> **B.    Counsel was ineffective at the Rearraignment hearing under the Sixth Amendment to the Constitution of the United States when he failed to: (1) Explain and discuss the Change of Plea Hearing procedure and what would take place at that hearing prior to the proceeding; (2) Inform Starks-Fitts of the relevant circumstances and likely consequences of pleading guilty; (3) Review, discuss, explain and provide a copy of the written Plea Agreement to Starks-Fitts prior to the Change of Plea Hearing; and (4) Appear personally at the Change of Plea Hearing to advise Starks-Fitts of the Court's inquiries and colloquy. Counsel had a substitute counsel stand in for him at the Change of Plea Hearing who did not know anything about Starks-Fitts's case and could not give proper advise to her. In essence, she was abandoned by her attorney at the Change of Plea Hearing.**

"Today, plea bargains have become so central to the administration of the criminal justice

system that defense counsel have responsibilities in the plea bargain process, responsibilities that must

be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal

process at critical stages." *Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012).

The ABA has set forth the Responsibilities of Defense Counsel Regarding Guilty Pleas as

follows:

> (a) Defense counsel should keep the defendant advised of developments arising out of plea discussions conducted with the prosecuting attorney, and should promptly communicate and explain to the defendant all plea offers made by the prosecuting attorney.

(b) To aid the defendant in reaching a decision, defense counsel, after appropriate investigation, should advise the defendant of the alternatives available and address considerations deemed important by defense counsel or the defendant in reaching a decision. Defense counsel should not recommend to a defendant acceptance of a plea unless appropriate investigation and study of the case has been completed.

(c) Defense counsel should conclude a plea agreement only with the consent of the defendant, and should ensure that the decision whether to enter a plea of guilty or nolo contendere is ultimately made by the defendant.

(d) Defense counsel should not knowingly make false statements or representations as to law or fact in the course of plea discussions with the prosecuting attorney.

(e) At the outset of a case, and whenever the law, nature and circumstances of the case permit, defense counsel should explore the possibility of a diversion of the case from the criminal process.

(f) To the extent possible, defense counsel should determine and advise the defendant, sufficiently in advance of the entry of any plea, as to the possible collateral consequences that might ensue from entry of the contemplated plea.

See ABA Standard 14- 3.2.

Based on the above standards, prior to a defendant entering into a guilty plea, it is a fundamental duty for counsel to communicate with his client, allow her to read, review and discuss as well as answer any questions that his client may have about her guilty plea. Counsel must also advise her regarding entering into a guilty plea or proceeding to trial. Further, counsel should explain the procedure and what to expect at the Change of Plea Hearing. He should inform his client that the court will be making inquiries that she will be requested to answer under oath and on the record. At that hearing, the court will conduct a plea colloquy with the defendant making such inquiries to determine if the defendant: (1) has read and reviewed the Plea Agreement with counsel; (2) understands the nature and elements to which the plea is offered; (3) has been informed of the maximum possible sentence on the charge; (4) is pleading voluntarily; and (5) agrees that there is a factual basis for the plea. See Rule 11(b)(1-2) of the Federal Rules of Criminal Procedure.

In this case, Rosen failed miserably with the above ABA standards. None of the above occurred prior to the Change of Plea Hearing. On the day of that hearing, Rosen had a substitute counsel appear in place of him, who did not know anything about Starks-Fitts's case or her guilty plea. She also believed that the substitute attorney was intoxicated. In essence, Rosen abandoned his client at her guilty plea. As such, his lack of performance and appearance can only be deemed deficient to the Starks-Fitts's detriment. Had she been properly advised about her guilty plea by her attorney, there is a reasonable probability that she would not have pled guilty and would have proceeded to trial.

Therefore, because of Rosen's deficiency in the plea process, Starks-Fitts's guilty plea was not voluntary. Accordingly, it should be vacated and she should be allowed to plea anew.

**C.** **Sentencing counsel's failure to: Counsel failed to: (1) Review, discuss or explain the PSR to Starks-Fitts; (2) File PSR objections which Starks-Fitts requested that he file; (3) Object and argue for mitigation of Starks-Fitts's sentence; (4) Advise, inform and consult with Starks-Fitts regarding filing a direct appeal; and (5) File a Notice of Appeal deprived Starks-Fitts of effective assistance of counsel under the Sixth Amendment, a fair and just sentence and a fair and meaningful appellate review of her case.**

> (1-3) <u>Failure to Discuss and Explain the PSR with Starks-Fitts Prior to the Sentencing Hearing and File Objections to the PSR.</u>

Rosen's performance at sentencing was also deficient. Prior to sentencing, he failed to review, discuss and explain the PSR to Starks-Fitts. After a cursory review of the PSR, Starks-Fitts requested that Rosen file specific objections to the PSR. Rosen failed to do so prior to sentencing, and he failed to raise or argue objections at sentencing. He also did not argue for any mitigation of Starks-Fitts's sentence. It was his theory that Starks-Fitts should not make any waves at sentencing because the government was going to file a Motion for Downward Departure pursuant to USSG § 5K1.1.

22

However, the government did not file same, but the government left the door open for a reduction at a later time under Rule 35(b) of the Federal Rules of Criminal Procedure. This also has not happened. As such, Rosen was obviously unprepared for Starks-Fitts's sentencing hearing. Instead of paying attention to his client, Rosen was more interested in telling jokes to the prosecution. He was wholly inattentive to Starks-Fitts prior to and at her sentencing.

Accordingly, Rosen's performance in preparation for sentencing was deficient and Starks-Fitts was prejudiced by his deficiency because there were no objections raised or argued prior to sentencing, or at the sentencing hearing. He even failed to argue that Starks-Fitts's sentence was substantively unreasonable. As such, there were not any issues preserved for a direct appeal, which Rosen also did not consult about with Starks-Fitts.

> (4-5)   Failure to Advise, inform and consult with Starks-Fitts regarding filing a direct appeal; and File a Notice of Appeal deprived Starks-Fitts of effective assistance of counsel under the Sixth Amendment and a fair and meaningful appellate review.

The Supreme Court has long held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Rodriquez v. United States,* 395 U.S. 327 (1969). This is true even when a defendant has waived her right to a direct appeal and collateral review, such as through a waiver clause in a plea agreement. See *United States v. Tapp,* 491 F.3d 263, 265-66 (5th Cir. 2007). See also, *Roe v. Flores-Ortega,* 528 U.S. 470, 476-77 (2000).

A lawyer performs deficiently if he "disregards specific instructions from the defendant to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). A lawyer also performs deficiently if he fails to discuss, consult and advise his client as to the advantages and disadvantages

of an appeal and fails to ascertain the defendant's wishes about an appeal whenever "there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that she was interested in appealing." *Id.* at 478-80.

In this case, Starks-Fitts pled guilty. Given the circumstances in this case and Starks-Fitts's lack of information regarding an appeal, it is respectfully requested that this Court grant her leave to file an out of time Notice of Appeal.

If counsel fails to consult with the defendant about an appeal, then the question is whether that failure was unreasonable because it breached the duty to consult. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that she was interested in appealing." *Id.* at 480. The existence of a duty to consult is assessed in light of "all the information counsel knew or should have known." *Id.* Whether the conviction followed a trial or a guilty plea is "highly relevant," although not determinative, as is whether the defendant waived his right to appeal and whether he received a sentence for which he bargained. *Id.* The Supreme Court predicted that district courts would find a duty to consult "in the vast majority of cases."

Rosen failed to inform, discuss, or consult Starks-Fitts regarding the advantages and/or disadvantages of a direct appeal in order to determine her wishes about filing an appeal. Without performing this fundamental duty, Rosen failed to, in an overabundance of caution, take the ministerial task of filing a Notice of Appeal. Starks-Fitts was prejudiced because she lost out on a golden opportunity to have a fair and meaningful appellate review of her case because of her attorney's deficiency.

Rosen's inattention to Starks-Fitts throughout the proceedings in this case represents a *prima facie* case of ineffective assistance of counsel. See *United States v. Van Pham*, 722 F.3d 320 (5th Cir. 2013). In *Van Pham*, the petitioner appealed the denial of his § 2255 motion in which he asserted ineffective assistance of counsel based on his lawyer's failure to consult with him about filing a direct appeal of his sentence. The Fifth Circuit concluded that Pham reasonably expressed an interest in an appeal immediately after he was sentenced, which triggered counsel's duty to consult. The Court reversed and remanded to give Pham an opportunity to file a direct appeal.

In addition to considering whether a defendant has clearly communicated a desire to appeal and whether such communication was made in a timely manner, the Court must also consider whether counsel "fully inform[ed] the defendant as to [her] appellate rights." To meet his constitutional duty, Rosen had to do more than simply give Starks-Fitts notice "that an appeal is available or advice that an appeal may be unavailing." *Id.* He even failed to simply give Starks-Fitts notice of her right to appeal, let alone consult her about it. Instead, he must have advised Starks-Fitts "not only of [her] right to appeal, but also of the procedure and time limits involved and of [her] right to appointed counsel on appeal." *Id.* (quoting *United States v. Faubion*, 19 F.3d 226, 231 (5th Cir. 1994)). Failure to provide such advice constitutes constitutionally deficient performance. *Id.*

When considering prejudice in a case involving counsel's failure to file a Notice of Appeal, the Fifth Circuit does not require Starks-Fitts to show that her appeal would have had merit. *Tapp*, 491 F.3d at 265 (citing *Flores-Ortega*, 528 U.S. at 486). The reason that Starks-Fitts need not make this showing follows the reasoning in *Strickland* that when counsel's acts render a court proceeding unreliable or nonexistent, the Court presumes prejudice with no further showing from the defendant of the merits of her claims. *Flores-Ortega*, 528 U.S. at 484. Thus, "when counsel's constitutionally

25

deficient performance deprives a defendant of an appeal that [s]he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling [her] to an appeal." *Id.* As such, "the defendant must only demonstrate that there is a reasonable probability that, but for counsel's failure, [s]he would have timely appealed." *Tapp*, 491 F.3d at 265. The Court's focus therefore should be on whether Starks-Fitts can demonstrate that, but for Rosen's deficient performance, i.e., his failure to consult and file a Notice of Appeal, she would have appealed the District Court's April 24, 2013 Judgment in a Criminal Case [Doc. 80] in a timely manner.

In this case, it is clear from the record that the Court gave Starks-Fitts notice of her right to appeal. See Doc. 76.

Most importantly, however, nothing in the record directly refutes Starks-Fitts's claim that counsel failed to consult with her regarding the timely of a Notice of Appeal. The fact that Starks-Fitts was advised of her right to appeal by the Court at sentencing does not excuse Rosen from consulting and advising her of her appeal rights. It also does not preclude Rosen from the fact that he did not perform the ministerial task of filing a Notice of Appeal on her behalf. See *Flores-Ortega*, 528 U.S. at 477.

As the record fails to establish that Rosen consulted with Starks-Fitts regarding filing a notice of appeal and appeal, this Court may grant Starks-Fitts relief in the form of an out of time appeal in the first instance. In the alternative, the Court should hold an evidentiary hearing to expand an incomplete record in this matter. Because counsel failed to consult with his client about an appeal, Rosen's performance was objectively unreasonable under *Flores–Ortega* or any objective reasonable standard. Under *Flores-Ortega,* in a circumstance as the current matter, prejudice is presumed.

## VI. <u>CONCLUSION</u>

For the above and foregoing reasons, Starks-Fitts's conviction and sentence should be vacated so that she may plea anew. In the alternative, it is respectfully requested that the Court hold an evidentiary hearing so that she may further prove her meritorious grounds for relief, resolve disputed facts in and out of the record and expand an incomplete record.

Respectfully submitted,

*Vicki Starks-Fitts*

VICKI STARKS-FITTS
REG. NO. 18614-078
FCI TALLAHASSEE
FEDERAL CORRECTIONAL INSTITUTION
501 CAPITAL CIRCLE, NE
TALLAHASSEE, FL 32301
Appearing *Pro Se*

## <u>DECLARATION OF VICKI STARKS-FITTS</u>

I, Vicki Starks-Fitts, declarant herein, declare and attest to the fact in the above and foregoing Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody to be true and correct to the best of my knowledge under the penalty of perjury pursuant to 28 U.S.C. § 1746.

Date: **Feb 23**, 2015                    *Vicki Starks-Fitts*

VICKI STARKS-FITTS

27