IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| VICKI STARKS-FITTS | § | |
| VS. | § | CIVIL ACTION NO. 1:15cv89 |
| UNITED STATES OF AMERICA | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Movant Vicki Starks-Fitts, proceeding *pro se*, filed this motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Prior Proceedings

In 2012, a grand jury returned a three-count indictment against movant and three co-defendants. In count 1, the four co-defendants were charged with conspiring to murder in aid of racketeering activity. In count 2, the co-defendants were charged with murder in aid of racketeering activity. In count three, the co-defendants were charged with possessing and discharging a firearm in furtherance of a crime of violence resulting in death.[1]

Movant subsequently entered a plea of guilty to a one-count information charging her with Racketeer Influenced and Corrupt Organizations. The plea of guilty was entered in accordance with a written plea agreement. Movant was sentenced to 378 months of imprisonment. Movant later filed

---

[1] Two superseding indictments were returned that added charges and defendants, but did not alter the charges against movant.

a *pro se* motion for an out of time appeal that was construed as a notice of appeal. Movant stated she was requesting an out of time appeal because she did not know she could file an appeal and her attorney never stated that she could. The court denied movant's motion because the notice of appeal was filed outside the time for filing a timely notice. The United States Court of Appeals for the Fifth Circuit affirmed the denial.

Grounds for Review

Movant states she received ineffective assistance of counsel because counsel failed to: (1) communicate with her and conduct an adequate pretrial investigation; (2) file substantive motions; (3) provide relevant advice and (4) negotiate a reasonable plea agreement. Movant also contends counsel was ineffective in connection with the change of plea hearing and sentencing. Finally, movant asserts counsel failed to file a notice of appeal and was subject to a conflict of interest.

Factual Bckground

Movant describes the factual background of her case as follows:

> The SWS is an acronym for "Solid Wood Soldiers" and "Separate White State." This race-based organization operates inside and outside of jails and prisons in Texas and elsewhere. It was founded during the 1990s by inmates within the Texas Department of Criminal Justice ("TDCJ") for the protection of white inmates and advancement of white supremacy and white separatism. The SWS eventually expanded its focus to include illegal activities for profit. Their criminal enterprises include trafficking methamphetamine, firearms, and forging currency. SWS protects its power, territory, and profits through intimidation and violence, including assaults, robbery, and murder. The chain of command is president, vice-president, council, major, captain, lieutenant, sergeant, and soldier. This basic ranking structure remains constant, but there are frequent promotions, demotions, and terminations.
>
> Tanner Lynn Bourque ("Bourque") was a council member for the SWS, Kristopher Leigh Guidry ("Guidry") was a captain for the SWS, Kenny Don Stanley ("Stanley") was a soldier, James Lee Sedtal ("Sedtal") was also a member of SWS, although his rank is unknown. Associates of SWS included Starks-Fitts, Steven Claude Gibble ("Gibble") and Mikell Allen Cunningham ("Cunningham"). [Craig Pipps, a/k/a "Lone Wolf"] was president of SWS. Stark-Fitts only knew Gibble and Cunningham

2

for approximately six (6) weeks.

Starks-Fitts had met Borque, Guidry, and Stanley through her son, James Trager, who was an SWS member. Borque, Guidry, and Stanley had stayed at Starks-Fitts's residence for approximately three or four weeks prior to the murder of Sedtal. Trager stopped by Starks-Fitts's residence to visit her as he was passing through town. He had several of his SWS friends with him. Later, in 2010, Trager and his friends stopped by again for a visit. As time passed, the SWS members maintained contact with Starks-Fitts for various reasons even without the presence of her stepson. She frequently heard the SWS members discussing assaults and possible murders, but Starks-Fitts thought they were "all talk." Starks-Fitts advised that she would never willingly be involved in a murder conspiracy in light of the fact her son was murdered. However, Starks-Fitts was present for the disposal of Sedtal's body and subsequent meeting with SWS authorities, as she feared for her life. She stated the members would not let her out of their sight, as they feared she would call the police.

In February 2011, Bourque became a constant companion of Starks-Fitts, partnering closely in her crystal methamphetamine trafficking business. Starks-Fitts conducted business from her residence located in Hull, Texas. Her source lived near Houston, Texas.

On March 11, 2011, while Gibble and Sedtal were delivering methamphetamine in Orange County, Sedtal shot and wounded an Aryan Brotherhood of Texas (ABT) associate. ABT is a nationally recognized criminal gang operating in the Orange County area of Texas and elsewhere. ABT has similar philosophies and operations as SWS and predates SWS in the Orange County area. ABT has de facto supremacy over SWS in Orange County. While at Starks-Fitts's residence on March 13, 2011, Bourque informed her, Guidry, and Stanley that Sedtal "needed to go" to prevent ABT from retaliating against SWS for the shooting. Sedtal called Starks-Fitts's residence numerous times requesting that they come and get him because he was afraid. Bourque, Guidry, and Stanley drove to Vidor, Texas, picked up Sedtal, and transported him back to Starks-Fitts's residence. Bourque lied to Sedtal, telling him and the others that they were going to kill Gibble and put him in the trunk of Guidry's stolen automobile (a Nissan Maxima). Sedtal, Guidry, and Stanley then lined the trunk of the Maxima with garbage bags. At this time, Starks-Fitts was in her house washing clothes, cooking and cleaning house. She was unaware that they had left until from her porch she could see that their car was gone.

Bourque carried a .22 revolver out to the Maxima. The revolver had a make-shift silencer consisting of a plastic bottle taped over the gun barrel. The weapon was cocked and placed in the Maxima for Stanley to use to kill Sedtal. While Stanley was standing at the trunk, with Guidry and Sedtal, Stanley put the gun to Sedtal's head and fired once. When Sedtal fell to the ground, Stanley and Guidrey assumed he was dead and they reported back to Bourque. Shortly thereafter, Stanley and Guidry

placed Sedtal's body in the trunk of the Maxima. Later, when Guidry and Stanley heard moaning coming from the trunk, Guidry handed Stanley the gun and told Stanley to put Sedtal "out of his misery." At that time, Guidry opened the trunk and Stanley shot Sedtal one more time. After that shot, the moaning stopped.

Around 7 or 8 a.m., on March 14, 2011, Bourque, Starks-Fitts, Guidry, and Stanley left the residence together to dispose of Sedtal's body. Bourque and Starks-Fitts led the way in Bourque's Lexus. Guidry and Stanley followed in the Maxima with Sedtal's body in the trunk. On the way, both cars stopped at a gas station and Starks-Fitts purchased fuel for the Maxima.

After fueling the Maxima, Bourque, Starks-Fitts, Guidry, and Stanley left in the two vehicles and headed north towards Rye, Texas. Starks-Fitts was familiar with the area and led Guidry, Bourque, and Stanley to the end of a secluded logging trail where Guidry parked the Maxima. Bourque, Guidry, and Stanley used lighter fluid to set the Maxima on fire. The four then left the car burning and ate breakfast together at a nearby café.

Bourque promoted Stanley and Guidry within SWS for following the order to kill Sedtal. Stanley was promoted from Soldier to Captain, and Guidry was promoted from Captain to Major.

On March 19, 2011, Bourque, Starks-Fitts, Guidry, and Stanley returned to Southeast Texas. On March 23, 2011, around 5:00 p.m., a man called 911 to report he had discovered human remains in the trunk of a burned car located in a remote wooded area in Hardin County, Texas. The car was badly burned but a partial VIN number was recovered from the car by investigators. The burned car was identified as the Maxima which Guidry stole from a man in Houston, Texas, on or about February 14, 2011.

On March 25, 2011, Stanley was riding in an all-terrain vehicle (ATV) in Tyler County, Texas. Officers responded to the area and observed Stanley on the ATV, wearing a holstered loaded Smith and Wesson .357 pistol. He had .380 and 9mm ammunition with him. The ATV was registered to Starks-Fitts. Stanley was arrested for being a felon in possession of a firearm.

On March 27, 2011, law enforcement officers arrested Bourque and Starks-Fitts at Starks-Fitts's residence. Bourque was in possession of a ballistic vest and a .38 caliber revolver and attempted to hide behind a vehicle in the driveway. Starks-Fitts was inside the home when she was arrested. A loaded .380 caliber pistol was secreted within a stereo speaker inside her residence and a loaded .22 semi-automatic pistol was located inside her trunk. The .22 pistol was inside a bag containing personal items that belonged to Starks-Fitts. Officers also found several items from the stolen Maxima at the residence, including the owner's registration, insurance

4

documents, and a spare tire. The items were located next to Starks-Fitts's porch, where Stanley and Guidry had placed them before killing Sedtal.

Guidry evaded law enforcement for several days, but surrendered on March 27, 2011.

In addition to her association with the criminal venture to kill Sedtal, in the Factual Basis and Stipulation, Starks-Fitts acknowle[d] she was aware that SWS members sell methamphetamine to make money and was aware that some members "cooked" methamphetamine using the "shake and bake" method.

## Standard for Review

Relief may be granted under 28 U.S.C. § 2255 only for a "transgression of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). "A collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991). "Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding." *Vaughn*, 955 F.2d at 368.

## Analysis

### *Legal Standard for Ineffective Assistance of Counsel Claim*

To prevail on an ineffectiveness of counsel claim, it must be shown: (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1994). For a movant to demonstrate deficient performance a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance must be overcome. *Id*. at 698; *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999). To show prejudice, there must be a reasonable probability that but for counsel's professional errors the result of the proceeding would have been

different. *Id*. at 687; *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

In the context of a guilty plea, the prejudice prong of the *Strickland* test requires a defendant to show there is a reasonable probability that but for counsel's errors, she would not have pled guilty. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A mere allegation of prejudice is insufficient. Instead, a defendant must establish that but for counsel's errors, she would have insisted on going to trial rather than pleading guilty. *Carter v. Collins*, 918 F.2d 1198, 1200 (5th Cir. 1990). This assessment will depend in part on a prediction of what the outcome of a trial might have been. *Hill*, 474 U.S. at 56-58. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the prejudice will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. That assessment, in turn, will depend in large part on a prediction of whether the evidence likely would have changed the outcome of the trial. Similarly, where the alleged error is a failure to advise the defendant of a potential affirmative defense to the charge, resolution of the prejudice inquiry will depend largely upon whether the affirmative defense likely would have succeeded at trial. *Id*.

*Application*

1. <u>Failure to Communicate and Investigate</u>

Movant states she was unable to discuss her case in any meaningful way with her attorney during his representation of her. She states that if counsel had discussed the case with her, he would have found out that she had very important information about potential witnesses that counsel could have subpoenaed to testify as defense witnesses if they had proceeded to trial. However, counsel failed to interview any witnesses. Movant states counsel visited her only one time without a

6

prosecutor being present. She states counsel asked her if she killed anyone. She said she did not. Counsel then told her they were going to trial and that he would be back to go over the case. However, counsel never came back. Nor did he conduct any independent investigation.

Movant has not provided the name of any potential witnesses that could have been subpoenaed to testify on her behalf or demonstrated they would have been available and willing testify. Nor has she described what testimony they could have provided or explained how their testimony would have assisted her defense. Further, movant has not stated what evidence counsel could have discovered through an independent investigation or described how such evidence would have helped her. To establish an attorney was ineffective for failing to investigate, a movant must allege with specificity what the investigation would have revealed. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

As movant has not described what testimony the potential witnesses could have provided or what evidence counsel could have uncovered through additional investigation, it cannot be determined whether such evidence would likely have changed the outcome of the trial and therefore caused counsel to change his recommendation to plead guilty. As a result, movant has not shown prejudice because she has not carried her burden to show there is a reasonable probability that if counsel had contacted witnesses and conducted an independent investigation, she would have insisted on going to trial rather than pleading guilty.

2. Failure to File Motions

Movant also states counsel failed to file any pretrial substantive motions. Instead, he only filed three boiler plate motions.

Movant has not identified any motions counsel should have filed or demonstrated how any

7

unfiled motions would have assisted her. Accordingly, it cannot be concluded counsel's failure to file additional motions fell below an objective standard of reasonableness or resulted in prejudice.

    3. <u>Failure to Provide Advice</u>

Movant states counsel provided her with erroneous advice. She states counsel did not properly inform her of the maximum sentence she could receive if found guilty at trial. Nor did he advise her of the relevant circumstances and likely consequences of pleading guilty rather than going to trial. Movant states counsel rushed her into a guilty plea without this vital information. She states counsel strongly advised her to plead guilty to the information and not proceed to trial. She states she wanted to proceed to trial, but that counsel talked her out of it. Movant states counsel failed to inform her of the substance of the plea agreement. He strenuously advised her to sign the plea agreement and told her that if she did not, she would be sentenced to life in prison.

Movant had her initial appearance on January 28, 2013. At that hearing, the court informed her as to the maximum sentence she could receive under the original indictment. In addition, the court conducted a change of plea hearing on August 22, 2013. At the hearing, movant acknowledged that she had discussed the facts of the case with her attorney, the charges pending against her and any possible defense she might have. She confirmed she was fully satisfied that counsel had considered all these factors and that she was fully satisfied with his representation and the advice he had provided. She acknowledged she understood the charge contained in the information and the court explained what the government would have to prove beyond a reasonable doubt to convict her of the charge. The court explained that she could be sentenced to a term of up to life imprisonment. Movant acknowledged that her decision to plead guilty was based on discussions she had with counsel. Further, she acknowledged she had read the plea agreement and asked counsel any

questions she had about the agreement. She stated she understood all of the terms of the plea agreement. The court then summarized the contents of each paragraph of the agreement.

Movant states that prior to her change of plea hearing, counsel told her to "not make waves" at the hearing because if she did the court might not accept her plea. This would force her to proceed to trial where she would be exposed to a much harsher sentence. Movant states she followed counsel's advice and agreed with the court's statements during the plea colloquy.

While movant now attempts to call into question the truthfulness of her statements at the change of plea hearing, "[s]olemn declarations in open court carry a strong presumption of verity." *Montoya v. Johnson*, 226 F.3d 399, 406 (5th Cir. 2000) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1971)). In addition, statements made by a defendant during a plea colloquy are entitled to "great weight." *United States v. Cochran*, 302 F.3d 279, 283-84 (5th Cir. 2002). With this in mind, it must be concluded the record demonstrates movant was informed of the maximum sentence she could receive if convicted. In addition, movant acknowledged she had discussed the facts of her case and the charges against her with counsel and that she was fully satisfied with counsel's representation. She also acknowledged having the opportunity to discuss the plea agreement with counsel and the court explained the plea agreement to her in some detail.

Movant also faults counsel for rushing her into accepting the plea agreement and talking her out of proceeding to trial. However, as the record does not indicate what evidence movant could have presented in her defense at trial, counsel's advice that movant accept the plea agreement did not fall below an objective standard of reasonableness. Further, in light of the charges against her, counsel's statement that she could receive a life sentence if convicted at trial was not erroneous.

Movant's allegations with respect to this ground for review fail to demonstrate that counsel's performance fell below an objective standard of reasonableness or caused her to suffer prejudice. As a result, this ground for review is without merit.

4. Failure to Negotiate Plea Agreement

Movant states counsel failed to negotiate a reasonable plea agreement with the government that would have been to her benefit. Instead, he accepted the government's initial offer and rushed movant into accepting it.

Counsel has submitted an affidavit stating he spent months trying to work out a plea agreement for movant. Movant states counsel accepted the government's initial offer, but does not state the basis for her belief. Moreover, movant has provided no evidence indicating that the government would have been willing to make a better offer than the one she received. In the absence of any such evidence, it cannot be concluded counsel's failure to negotiate a better plea agreement fell below an objective standard of reasonableness or caused movant to suffer prejudice.

5. Ineffectiveness at Change of Plea Hearing

Movant also states counsel was ineffective in connection with her change of plea hearing. She states counsel had a substitute who did not know anything about her case appear to represent her. She believes substitute counsel was intoxicated at the hearing. Movant also states counsel failed to inform her as to what to expect at the hearing or inform her that the court would be making inquiries that she would be expected to respond to under oath.

The actions taken by the court at the change of plea hearing and movant's answers to the court's questions at the hearing have been described above. While movant was represented at the hearing by substitute counsel who she now contends was intoxicated, the transcript does not indicate

any confusion on the part of substitute counsel or any inability on the part of counsel to intelligently respond to the court's questions. Nor did movant object to substitute counsel's appearance. Further, despite her contention that counsel failed to properly prepare her for the hearing or the court's questions, the transcript does not indicate any confusion on her part or any inability to respond to the court's questions. Based on a review of the transcript of the change of plea hearing, it cannot be concluded substitute counsel's performance at the hearing fell below an objective standard of reasonableness or caused movant to suffer prejudice.

      6. <u>Ineffectiveness at Sentencing</u>

Movant states counsel failed to discuss the Presentence Investigation Report ("PSR") with her. She states that after a cursory review of the PSR, she asked counsel to file specific objections. However, he failed to do so. Movant states counsel also failed to argue for any mitigation of her sentence. She states counsel's theory was that she should not "make any waves" at sentencing because the government was going to file a motion to have her sentence reduced. She states counsel was not prepared for the sentencing hearing. She states counsel was wholly inattentive to her and more interested in telling jokes to the prosecution than paying attention to his client.

At sentencing, counsel argued for a lighter sentence based upon movant's acceptance of responsibility. He stated movant had changed her life and asked the court to give her a "ray of hope." In his affidavit, counsel described his strategy at the sentencing hearing as follows:

> My statement at sentencing was an effort to convey a sense that life is precious for everyone. I spoke from the heart with honesty and appeal. I hoped the Judge would take up my theme and show mercy for Ms. Starks-Fitts. I did not want Ms. Starks-Fitts to receive life in prison for the crime she had committed. I wanted the judge to allow her to life some of her life free in the future.

Movant's sentencing range was 360 months to life imprisonment. Therefore her sentence of 378 months of imprisonment was towards the low end of the sentencing range.

Counsel raised three written objections to the PSR: (1) there was no evidence movant either owned or provided the gun used by Sedtal; (2) movant's offense level should have been decreased because she was a minimal participant and (3) a prior conviction for being a felon in possession of a firearm should not have been used in calculating movant's criminal history because in that case movant signed a plea agreement with the condition that no additional points for this offense would be added for sentencing purposes to a subsequent offense.

The probation officer stated that the first objection had no impact on the calculation of the sentencing range. Counsel only argued the third objection at the sentencing hearing. The court then concluded that movant was not a minimal participant. In addition, the court concluded movant's prior offense should be counted as part of her criminal history for sentencing purposes. The probation officer found that the plea agreement in movant's prior offense contained no provision concerning its use with respect to future offenses. During the sentencing hearing, counsel stated that the agreement in the prior case was an oral agreement.

Movant has not demonstrated there is a reasonable probability the court erred in overruling counsel's objections. Nor has she identified any other objections counsel should have filed. Moreover, while movant asserts counsel failed to argue for mitigation of her sentence, he did explain why he believed movant deserved a chance to spend some part of her life outside of prison and argued that her acceptance of responsibility indicated she deserved another chance. As the sentence imposed was towards the low end of the sentencing range, counsel's strategy was not wholly ineffective. Further, movant has failed to describe another type of argument in mitigation that would

have been more effective.[2]

Based on the foregoing, counsel's performance at the sentencing hearing did not fall below an objective standard of reasonableness and did not cause movant to suffer prejudice. This ground for review is therefore without merit.

7. Ineffectiveness Regarding Appeal

Movant also asserts counsel was ineffective for failing to discuss the possibility of her pursuing an appeal. She states counsel failed to provide her with information regarding the advantages or disadvantages of pursuing an appeal.

Under *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id*. at 478. In cases where the defendant "neither instructs counsel to file an appeal nor asks that an appeal not be taken," the deficient-performance inquiry involves "a separate, but antecedent question: whether counsel in fact consulted with the defendant about an appeal." *Id*. In this context, "consult" means that counsel tendered advice about the advantages and disadvantages of appealing and made a "reasonable effort to discover" the defendant's wishes on the issue. *Id*. In those cases where counsel has consulted with the defendant, deficient performance is shown if counsel fails "to follow the defendant's express instructions with respect to an appeal." *Id*.

---

[2] Movant asserts counsel told her not to "make any waves" at the sentencing hearing because the government was going to file a motion to have her sentence reduced. No such motion was ever filed. However, the prosecutor stated at the sentencing hearing that he could "foresee a time" when such a motion would be filed, indicating counsel had a reason to believe a motion for reduction of sentence might be filed.

Movant also faults counsel for incorrectly telling the court at sentencing that she had committed murder. As indicated above, movant did not fire the shot that killed Sedtal and she stipulated that Bourque, Guidry and Stanley committed the murder. However, there is no indication in the sentencing transcript that the court was confused by counsel's statement and believed movant actually committed the murder.

If counsel has not consulted with the defendant about appealing, the deficient performance inquiry focuses on whether the decision not to consult with the defendant was unreasonable. *Id*. at 479. Counsel has a constitutionally imposed duty to consult with a defendant about appealing "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480. The general requirement is that the attorney's decision whether to consult with the defendant be an objectively reasonable choice in light of all relevant factors. *Id*. at 479-480.

In this case, movant asserts counsel failed to consult with her concerning an appeal. Based on the foregoing authorities, counsel would have had a duty to consult with her if there was reason to think either a rational defendant would want to appeal or that she had reasonable demonstrated to counsel she had an interest in pursuing an appeal. Movant does not state she gave counsel reason to think she wanted to pursue an appeal. Moreover, in this case counsel had no reason to think a rational defendant would have wanted to appeal. Movant has not demonstrated she had any substantial defense to the offenses to which she pled guilty and her ability to appeal her conviction itself was severely limited by the plea agreement. Further, movant has not demonstrated she had any nonfrivolous issues to raise regarding sentencing. The parties agreed in the plea agreement that movant's based offense level was 43. This was the base offense level applied to movant by the court, although the offense level was decreased by three points based upon movant's acceptance of responsibility. This offense level and movant's criminal history category resulted in a sentencing range of 360 months to life imprisonment. Movant's sentence of 378 months of imprisonment was towards the low end of the sentencing range.

As movant's offense was assigned the base offense level agreed upon by the parties, and as movant was sentenced towards the low end of the applicable guideline range, movant has not shown she would have had a nonfrivolous issue to raise regarding sentencing. Nor has she identified a nonfrivolous issue to raise regarding her conviction itself. Counsel therefore had no reason to believe that a rational defendant would have wanted to file an appeal and was not required to consult with movant concerning an appeal. This ground for review is therefore without merit.

*Conflict of Interest*

Finally, movant contends counsel was subject to a conflict of interest. She states counsel's wife was suffering from cancer which prevented him from focusing on movant's case. In his affidavit, counsel acknowledges his wife was suffering from cancer while movant's case was proceeding. However, he states that except for not being able to appear at the change of plea hearing, he was "present, available and worked hard for [movant]."

An assertion that counsel had a conflict of interest can be governed by either *Strickland* or *Cuyler v. Sullivan*, 446 U.S. 335 (1980), depending on the nature of the alleged conflict.[3] The United States Court of Appeals for the Fifth Circuit has limited the reach of *Cuyler* to cases where an alleged attorney conflict was due to serial representation or simultaneous multiple representations of criminal defendants, reasoning that *Strickland* offers a superior framework for addressing conflicts outside the multiple or serial client context. *Beets v. Scott*, 65 F.3d 1258, 1265-66 (5th Cir. 1995) (*en banc*). Under *Beets*, cases in which it is alleged that the attorney's representation was affected by his own self-interest are evaluated under the more relaxed *Strickland* standard. *Id*. at 1271-72.

---

[3] As stated above, in order to be entitled to relief under *Strickland*, a petitioner must demonstrate prejudice. In contrast, if an attorney is subject to the type of conflict of interest to which *Cuyler* aplies, prejudice is presumed. *Cuyler*, 446 U.S. at 348.

The conflict of which movant complains is not governed by *Cuyler*. Movant does not assert that counsel's duty of loyalty to a current or former client prevented him from taking any particular action on her behalf. Instead, she asserts the medical condition of counsel's wife prevented him from adequately focusing on her case. To prevail on this type of claim, movant must establish counsel's inability to focus resulted in prejudice. For the reasons set forth above, movant has failed to establish that counsel's alleged deficiencies, whether caused by an inability to adequately focus on movant's case or not, resulted in prejudice. This ground for review is therefore without merit.

### Recommendation

This motion to vacate, set aside or correct sentence should be denied.

### Objections

Within 14 days after receipt of this report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations contained herein.

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within 14 days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996) *(en banc)*; 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

SIGNED this 7th day of March, 2018.

_____
Zack Hawthorn
United States Magistrate Judge